## MELVIN DAVIS v. STATE.

No. A-3920. Opinion Filed Dec. 21, 1922.
(210 Pac. 1042.)

(Syllabus.)

**Homicide—Assault with Intent to Kill by Shooting with Pistol—Insufficiency of Evidence.**—In a prosecution for assault with intent to kill by shooting with a pistol, evidence reviewed, and held insufficient to sustain the conviction.

Appeal from District Court, Le Flore County; E. F. Lester, Judge.

Melvin Davis was convicted of assault with intent to kill, and he appeals. Reversed.

Neal & Neal, for plaintiff in error.

George F. Short, Atty. Gen., and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, P. J.   Plaintiff in error, Melvin Davis, was tried and convicted on an information charging that in Le Flore county, on or about the 1st day of December, 1919, he did willfully, unlawfully, and feloniously make an assault upon the person of Ace Davis by shooting him with a pistol, with the unlawful and felonious intent to kill the said Ace Davis.   The jury failed to fix the punishment.   The court sentenced him to be confined in the penitentiary at McAlester for the term of six months.   To reverse the judgment an appeal was duly perfected.

In the view we have taken of the disposition necessary to be made of this case, it is neither important nor necessary to consider more than one of the many errors assigned, and that is, the insufficiency of the evidence to sustain the conviction.

It appears that the defendant, Melvin Davis, a man nearly 50 years old, and the complaining witness, Ace Davis, a young man about 25 years old, were cousins and lived near neighbors; that on the date alleged the complaining witness cursed the defendant, called him vile names, and threatened to whip him in the presence of several people, then followed him to a neighbor's house and invited him to fight, and later met him on the road and again threatened to assault him, and was shot by the defendant.

Ace Davis, the complaining witness, testified that—

"I was standing by the side of the road talking with two Parnell boys, and Joe Davis and Melvin Davis, the defendant, passed by going up to Grant Parnell's; I had a few words with Melvin as he passed, and I followed him to Grant Parnell's, and asked him to fight; Melvin turned his horse, and went down the road, and I followed him; when I overtook him he turned his horse and fired two shots; the first one hit me in the side."

On cross-examination he stated:

"When Melvin and Joe passed me going towards Parnell's, I told them to stop; that I wanted to whip Melvin; Joe stopped, and Melvin went on to Parnell's; I was drinking, but I knew what I was doing; when I got to Parnell's I got down from my horse and asked him to fight me; I called him a damm son of a bitch; I followed him something over a quarter of a mile when he shot me; before that, at a dance at Ross Ayers' house, I offered Melvin $15 to walk between me and the light."

Ed Fox testified:

"I was at a play party at Ross Ayers' house, and there heard the defendant, Melvin Davis, remark that he would like to get hold of Ace Davis."

Otis Vanmeter testified:

"I heard Melvin Davis say that he would like to get hold of Ace Davis; this was at a dance at Ross Ayers'."

The state rested, and the defendant moved for an acquittal in the form of a demurrer to the evidence, which was overruled, and exception allowed.

As a witness in his own behalf the defendant testified:

"I had started to Arkansas to sell a horse; I met Joe Davis; we rode on together about a quarter of a mile, and I saw Ace Davis and Will and Andrew Parnell standing by the roadside; as we passed Ace Davis said, 'There is Melvin Davis, the son of a bitch; I am going to whip him'; I rode on; Joe

did, too; Ace Davis started for his horse, and hollered. 'Hold on, there'; Joe slowed up; I kept going on, and stopped at Parnell's; they, Joe and Ace Davis, came along; Joe was trying to get Ace to go back; when Ace came up he jumped off his horse, and said, 'You told some parties you were going to whip me, and now is a good time to do it'; I said, 'Ace, you bring those parties to me'; he said, 'I don't have to bring nothing; you said it, you damn son of a bitch; don't deny it'; so I just turned my horse and rode on down the road towards Arkansas. Just as I got to the big road he hollered, 'Hold on there, you son of a bitch; you can't get away; I am going to whip you,' and he came right on; just as he came up even with me he pulled his horse, and grabbed to his side, and said, 'If you don't stop, I will kill you,' and I jerked my gun and shot at him; he grabbed his side, and I saw he did not have a gun in his hand, so I didn't try to shoot any more.''

Will Parnell, Joe Davis, and W. G. Parnell testified to the facts as testified to by the defendant.

Several witnesses qualified as character witnesses, and testified to the good character of the defendant as being a peaceable, law-abiding man.

In rebuttal the complaining witness testified:

"When I was shot by Melvin Davis, I did not have any arms or a pistol; I did not say I was going to kill him; I didn't intend to kill him; I was aiming to whip him, all right."

He was then asked:

"Q. Did you intend to whip him as much as you could without killing him? A. Yes, sir."

At the close of the evidence the defendant moved the court to direct the jury to return a verdict of acquittal, because the evidence is insufficient to sustain a conviction.

The Attorney General has filed a confession of error, on the ground that the evidence is insufficient to sustain the

verdict and to warrant a conviction, and that the court erred in six of the instructions given.

Carefully considering all the evidence, we reach the conclusion that the jury must have rendered their verdict under the influence of passion and prejudice, and we are clearly of the opinion that the verdict is contrary to the law and the evidence, and that the trial court should have sustained the defendant's motion to direct a verdict of acquittal.

The judgment of the lower court is therefore reversed, and the cause remanded, with direction to dismiss.

MATSON and BESSEY, JJ., concur.